UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON HAMILTON,

        Plaintiff,

      v.

ALLYSON BRITTANY MORAN,
RICHARD COOK, individually,
STOCKBRIDGE COMMUNITY
SCHOOLS, and EDUSTAFF, LLC,

        Defendants.

_____/

Case No. 19-11572

Hon. George Caram Steeh

OPINION AND ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT (ECF NOS. 27, 28, 31, 32, 33, 34)

Several motions for summary judgment are before the court. Plaintiff

brought this action pursuant to 42 U.S.C. § 1983 against his former

chemistry teacher, the school principal, the school district, and the school

staffing agency after the teacher sexually abused him while he was a high

school student. Although the teacher's actions were criminal and

indefensible, they do not implicate federal constitutional concerns.

Accordingly, the court will grant summary judgment in favor of Defendants

on Plaintiff's § 1983 claims.

BACKGROUND FACTS

Plaintiff Brandon Hamilton engaged in a sexual relationship with his chemistry teacher, Defendant Allyson Moran, during his sophomore year at Stockbridge Community High School. Moran was a long-term substitute who was employed by EDUStaff and placed in Stockbridge Community Schools. During the relevant time period, the 2016-17 school year, Richard Cook was the principal at Stockbridge Community High School.

EDUStaff contracted with Stockbridge to provide substitute teachers. Pursuant to that contract, EDUStaff was Moran's "employer" and was responsible for hiring her, conducted a background check, and providing training and supervision. *See* ECF No. 32-2. Upon being hired by EDUStaff, Moran received training on various issues, including on state and federal laws applicable to schools and sexual harassment. ECF No. 32-3; ECF No. 39-2 at 67-69. She also acknowledged receiving an employee handbook from EDUStaff. ECF No. 39-2 at 64. Although Moran does not recall the substance of the training, she was nonetheless aware that teachers were not supposed to have sex with students. *Id.* at 75.

Hamilton was assigned to Moran's chemistry class during the first semester of the school year, when he was fifteen years old. During the time Hamilton was in Moran's class they had a "student and teacher"

- 2 -

relationship, "nothing more." ECF No. 40-3 at PageID 1941. Hamilton would go to Moran's classroom during lunch to talk. *Id.* In March 2017, they began exchanging messages on Snapchat. *Id.* at PageID 1941-42. Plaintiff asserts that Moran began grooming him by sending him personal texts, messaging him through Snapchat, and flirting with him.

While Hamilton was on vacation with his family in Florida, Moran began texting nude photographs of herself to him. *Id.* at PageID 1943. After he returned to school, he did not go to her classroom for lunch because he was "kind of nervous," although he continued to send messages and nude photos of himself to her on Snapchat. *Id.* at PageID 1944, 1958. A couple of weeks later, during spring break, Moran invited Hamilton to her home. Hamilton drove himself there and brought a condom. *Id.* at PageID 1963. Moran answered the door while wearing a robe, led him to the basement, and began kissing him. *Id.* at PageID 1946-47. She then led Hamilton upstairs, where they had sex in a spare bedroom. According to Hamilton, he returned to Moran's house a second time during spring break to engage in sexual relations. After that, they did not engage in further sexual activity. Hamilton continued to visit Moran's classroom at lunch time, along with other students. *Id.* at PageID 1952-53. Hamilton testified that there was no "intimacy" on school grounds or during school activities. *Id.* at 1957.

After spring break, Moran continued to send Hamilton nude photos of herself. ECF No. 37-6 at PageID 1609-10. Hamilton also alleges that Moran flirtatiously touched his leg in the classroom. ECF No. 37-3 at 83-84. Moran drove him home from school or soccer games on a couple of occasions. *Id.* at 98, 102-103. Hamilton testified that she once put her hand on his penis, over his shorts, while they were in the car. *Id.* at 102-103. He stopped communicating with Moran on Snapchat sometime after spring break, when he began seeing his girlfriend. *Id.* at 94.

In April 2017, Principal Cook had a conversation with a student, "GM," regarding his academic struggles in Moran's class. According to Cook, GM blamed his academic difficulties on "unfair treatment" from Moran. ECF No. 27-6 at 69-70. When Cook asked him for evidence of this, GM said that Moran treats some students better than others and that "Brandon [Hamilton] has a crush on her and that's why she treats him differently." *Id.* Cook told GM that he would look into this allegedly unfair treatment.

In a subsequent meeting with Cook and Moran, GM was "very upset" about how he was treated by Moran and told her that "you don't flirt with all of us like you flirt with Brandon." ECF No. 27-6 at 73-76. Cook testified that he "immediately challenged" him on it: "you didn't say this in the earlier

meeting, what are you talking about, and he immediately backpedaled. . . . it turned back into he felt like he was not being treated fairly." *Id.* Cook did not interpret GM's statement as an allegation of misconduct because "he didn't have anything to support it and he clearly did not mean in the way which I reacted to it, so I did not . . . take it as an allegation." *Id.* at 78. After the meeting with GM, Cook counseled Moran about "being careful with your boundaries, that your door is always open, that there is no social media interaction, that there's no contact outside of school." *Id.* at 81-84. Moran testified, however, that Cook did not counsel her in this regard. ECF No. 39-2 at 56. Cook did not investigate GM's allegation or talk to Hamilton about it.

In August 2017, Hamilton told his father that he and Moran had sex earlier in the year. At the time, Moran's assignment was complete and she was no longer teaching at Stockbridge Community Schools. After a police investigation, she was charged with third and fourth degree criminal sexual conduct. Moran pleaded guilty to third degree criminal sexual conduct and was sentenced to prison; she is currently on parole as of December 2020.

Hamilton sued Moran, Stockbridge Community Schools, Cook, and EDUStaff, alleging violations of 42 U.S.C. § 1983 and state tort claims, as follows: Count I, violation of § 1983 against Moran; Count II, violation of

§ 1983 against Stockbridge, Cook, and EDUStaff; Count III, assault and battery against Moran; Count IV, intentional infliction of emotional distress against Moran; Count V, intentional infliction of emotional distress against Stockbridge, Cook, and EDUStaff; and Count VI, gross negligence against Moran, Cook, and EDUStaff. In addition, Stockbridge and Cook filed a crossclaim against EDUStaff for breach of contract and indemnity. There are several dispositive motions pending. Plaintiff has filed a motion for summary judgment against Moran and each of the Defendants has filed a motion for summary judgment against Plaintiff. Stockbridge and EDUStaff have also filed cross-motions for summary judgment against each other regarding Stockbridge's cross-claim for indemnification.

LAW AND ANALYSIS

I.    Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The facts and any reasonable inferences drawn from the facts must be

viewed in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In

response to a properly supported motion for summary judgment, the

opposing party must come forward with specific evidence showing there is

a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient

to meet this burden; the evidence must be such that a reasonable jury

could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II.    <u>Liability under § 1983</u>

A plaintiff may bring a claim under 42 U.S.C. § 1983 when he is

deprived "of any rights, privileges, or immunities secured by the

Constitution and laws," as a result "of any statute, ordinance, regulation,

custom, or usage, of any State." 42 U.S.C. § 1983. Plaintiff must

demonstrate that (1) he was deprived of a constitutional right; and (2) that

deprivation occurred under color of state law. *Id.* Plaintiff alleges that his

substantive due process right to bodily integrity was violated by Moran. The

parties do not dispute that "the right to be free from sexual abuse at the

hands of a public school teacher is clearly protected by the Due Process

Clause of the Fourteenth Amendment." *Doe v. Claiborne Cty., Tenn*., 103

F.3d 495, 506 (6th Cir. 1996). The issues in this case are whether Defendants acted under color of law or are subject to supervisor/municipal liability.

A. Allyson Moran

Moran argues that she was not acting under color of state law. "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001). For § 1983 to apply, the unconstitutional conduct "must be 'fairly attributable' to the state." *Id.* "[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Id.*

> A person "acts under color of state law when he abuses the position given to him by the state." The key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law. Logically, then, not every action undertaken by a person who happens to be a state actor is attributable to the state. Although "under 'color' of law means under 'pretense' of law," the acts of state officials "in the ambit of their personal pursuits" do not constitute state action.

*Id.* (citations omitted).

Plaintiff argues that Moran acted under color of state law because she developed a relationship with him while teaching at a public school, where they flirted and exchanged text messages, and the relationship escalated to sexual activity. However, "[w]here the performance of a state actor's official duties merely facilitated the meeting of or development of a relationship between the state actor and another person," and the state actor later assaults that person "on his own time and wholly independent of his official duties . . . . the law is clear that the state actor is not acting under color of law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1306-1307 (11th Cir. 2001) (citing cases).

A teacher's sexual abuse of a student has a sufficient nexus with the teacher's duties when the abuse occurs at school or during school-sponsored activities. *Compare Claiborne Cty.*, 103 F.3d at 501 (assuming coach acted under color of law when he abused student on bus trips to baseball games and kissed her in coaches' office, although sexual intercourse occurred off school grounds); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 n.4 (5th Cir.) (en banc), *cert. denied,* 815 U.S. 513 (1994) (teacher and basketball coach acted under color of law when he gave student "As" in his class without requiring work, grabbed her and kissed her after a basketball game, and abused her in a lab room and the school's

fieldhouse), *with Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir.), *cert. denied*, 522 U.S. 824 (1997) (although teacher had "first befriended and shown a special interest in" the victim at school, there was no nexus between official duties as teacher and sexual assault when teacher molested student off campus five months after student withdrew from school); *Roe v. Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (although school police officer met student at school, there was no nexus between his official duties and abuse of student, which occurred at officer's farm while he was off duty); *D.T. by M.T. v. Independent Sch. Dist. No. 16 of Pawnee Cty., Okla.*, 894 F.2d 1176, 1192 (10th Cir. 1990) (teacher was not acting under color of law when he molested children at a summer basketball camp, which was not a school-sponsored activity).

This case is closer to *Beccera* and *Roe* than to *Claiborne Cty.* and *Taylor.* Here, there is little connection between Moran's sexual abuse of Plaintiff and her official duties as a teacher. At the time they developed a personal relationship, Plaintiff was no longer a student in Moran's class. Their exchange of nude photos began while Plaintiff was on vacation. The sexual activity occurred at Moran's home, where Plaintiff was invited and voluntarily arrived outside of school hours. Although Plaintiff and Moran's relationship was initiated at school, and they continued to communicate

there, this "development of trust and affection" at school does not mean

that later sexual abuse was perpetuated under color of law. *Becerra*, 105

F.3d at 1047 (rejecting color of law argument that "the later sexual abuse

would not have occurred" if the teacher had not first won the student's "trust

and affection" at school); *Roe*, 128 F.3d at 1218 (police officer spoke to

student often while on duty at school and bought her gifts, but later off-

premises sexual assault was not done under color of law).

In support of his argument that a nexus exists, Plaintiff alleges that

Moran flirtatiously touched his leg in a classroom and touched his penis

over his shorts in his truck in the school parking lot. Moran objects that

Plaintiff did not mention these incidents during his preliminary examination

testimony, when he stated that there was no "intimacy" on school grounds

or during school activities. The court does not view his preliminary

examination testimony and his allegation that Moran touched him

inappropriately in the school parking lot to be necessarily inconsistent.

Nonetheless, these incidents do not support the conclusion that Moran

abused Plaintiff while acting in an official capacity. The only allegation of

physical contact at school was that Moran flirtatiously brushed Plaintiff's

leg. This incident cannot be fairly characterized as sexual abuse. Although

the incident in the parking lot may be so characterized, there is no

allegation that it was related to any school activity or was the result of any abuse of Moran's authority as a teacher. *See Griffin*, 261 F.3d at 1306-1307. There is a "critical distinction in the color of law analysis between those cases where a state actor directly uses his official authority to create the opportunity to sexually assault a victim and those cases where a state actor merely uses his authority to develop or facilitate a relationship of trust with a victim, even though that relationship in some attenuated sense serves as a but for cause of a later sexual assault." *Id.* at 1307 n.12. *See also Drury v. Volusia Cty.*, 2012 WL 162362, at *11 (M.D. Fla. Jan. 19, 2012) (beach patrol officers were not acting under color of law when they had sex with underage lifeguard while off duty); *but see Claiborne Cty.*, 103 F.3d at 501 (coach abused student on bus trips to school baseball games); *Taylor*, 15 F.3d at 452 n.4 (teacher and basketball coach abused student in a lab room and the school's fieldhouse).

The court concludes that Moran's sexual abuse of Plaintiff was "private conduct, outside the course or scope of [her] duties and unaided by any indicia of actual or ostensible state authority." *Waters,* 242 F.3d at 359. Accordingly, her abuse of Plaintiff cannot be fairly attributable to the state and did not occur under color of law. *See id.* The court will dismiss Plaintiff's § 1983 claim against Moran.

B. Individual Liability of Principal Cook

Plaintiff's failure to establish unconstitutional conduct on the part of Moran also precludes his § 1983 claim against Principal Cook. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."). Moreover, Plaintiff cannot establish a § 1983 claim against Cook in any event, because he has not demonstrated that Cook authorized or acquiesced in Moran's misconduct.

Supervisor liability under § 1983 cannot be based upon respondeat superior or the right to control employees. *Claiborne Cty.*, 103 F.3d at 511. Rather, "liability must be based on 'active unconstitutional behavior,' and . . . a mere failure to act [is not] sufficient." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002). A plaintiff must demonstrate that "a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020). Supervisor liability may also not be based upon negligence:

> [I]t is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties. Rather . . . "[a] plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in . . . abuse showed a strong likelihood that he would attempt to . . . abuse

> other students, such that the failure to take adequate
> precautions amounted to deliberate indifference to the
> constitutional rights of students."

*Id.* at 866 (quoting *City of Roseville*, 296 F.3d at 439).

Plaintiff alleges that Cook received a report of Moran's misconduct and did not address or investigate the abuse. Viewing the evidence in the light most favorable to Plaintiff, another student informed Cook that Moran was "flirting" with Plaintiff. In the context it was given, this report of "flirting" would not necessarily alert Cook that Moran was sexually abusing Plaintiff. Although Plaintiff argues that Cook should have investigated further, his failure to do so, based upon the information he possessed, does not rise to the level of deliberate indifference. Plaintiff has not demonstrated that Cook implicitly authorized, approved, or acquiesced in Moran's abuse of Plaintiff. Accordingly, for this reason and because Plaintiff has not established an underlying constitutional violation, Cook is entitled to summary judgment on Plaintiff's § 1983 claim.

C. Municipal Liability of Stockbridge Community Schools

"As with supervisory liability, '[w]here . . . a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm.'" *McQueen*, 433 F.3d at 471. Thus, as with his claim against Cook, Plaintiff's

- 14 -

claim against Stockbridge fails because he has not demonstrated that Moran inflicted a constitutional injury. Additionally, Plaintiff's claim fails because he has not shown that the alleged constitutional violation was caused by a policy or custom of Stockbridge.

In order to establish municipal liability under § 1983, a plaintiff must point to a municipal policy or custom that is behind the constitutional violation. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978). One way a plaintiff may show a municipal policy or custom is to demonstrate a policy of inadequate training. *See Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

To demonstrate deliberate indifference in this context, Plaintiff may show that the school district failed to act in response to repeated complaints of constitutional violations by its officials. *Pendergrass*, 455 F.3d at 700-701; *see also Claiborne Cty.,* 103 F.3d at 508 (under an "inaction"

theory, a plaintiff may show deliberate indifference if a school district fails to act despite knowledge of "the existence of a clear and persistent pattern of sexual abuse by school employees"); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Plaintiff has not alleged a pattern of constitutional violations here. In the absence of a pattern of violations, Plaintiff may show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Miller v. Calhoun Cty.*, 408 F.3d 803, 816-17 (6th Cir. 2005). The Supreme Court has envisioned the possibility that in such "rare" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. As a hypothetical,

the Court provided the example of a municipality that neglects to train officers in the use of deadly force. "[I]n the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training." *Id.*

Plaintiff alleges that Moran was not trained in avoiding the sexual harassment or assault of students. Stockbridge asserts that, under their contract, EDUStaff was responsible for training its employees. Although Moran testified that she had not received such training, she later acknowledged that she had completed training modules, but she did not remember them. ECF No. 27-5 at 28-29, 67-71. EDUStaff submitted a certification showing that Moran completed online training for "Sexual Harassment" and "State and Federal Laws K12 MI" in 2015. ECF No. 32-3. EDUStaff's employee handbook, which Moran acknowledged receiving, contains a policy prohibiting sexual harassment. ECF No. 32-5 at PageID 907; ECF No. 39-2 at 64. Stockbridge also adopted an anti-harassment policy in 2015. ECF No. 27-8. This policy prohibits "sexual conduct/relationships" between district employees and students. *Id.* In addition, Moran was aware that teachers are not supposed to have sex with their students. ECF No. 39-2 at 75.

Plaintiff has not shown how the policies and training program adopted

by Stockbridge/EDUStaff were deficient or the result of deliberate indifference. He "cannot meet [his] burden of proof by showing that one [teacher] was unsatisfactorily trained, that 'an otherwise sound' training program was 'negligently administered,' or that harm could have been avoided if the [teacher] had had 'better or more training, sufficient to equip [her] to avoid the particular injury-causing conduct.'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 738 (6th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989)).

Plaintiff has also not demonstrated how additional training would guard against a teacher's willingness to engage in obviously criminal activity. Moran was not called upon to make a decision that only a properly trained employee could make, such as when a police officer may need to use deadly force. *See Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (failure to train nurses "who lack knowledge about the constitutional dimensions of providing adequate medical care to inmates in the jail setting" amounted to deliberate indifference). Even assuming that Moran's training was inadequate, Plaintiff has not demonstrated that the deficiency was "closely related to or actually caused" his injury, particularly in light of Moran's knowledge that having sex with students was wrong. *See Ellis,* 455 F.3d at 700. Stockbridge is entitled to summary judgment on

- 18 -

Plaintiff's municipal liability claim.

    D. Liability of EDUStaff

    EDUStaff also seeks summary judgment in its favor on Plaintiff's § 1983 claim, arguing that it is not a state actor. It is well settled that liability under § 1983 is premised on state action and that a private entity, acting on its own, cannot deprive a citizen of constitutional rights. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). "However, a private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Id.* In determining whether a private entity's actions may be fairly attributable to the state, the Sixth Circuit applies three tests: "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." *Id.* Plaintiff alleges that EDUStaff meets the public function and nexus tests.

    "The public function test requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Id.* The Supreme Court has held that education is not a service that is the "exclusive province of the State" and that a private school was not a state actor, despite receiving public funding. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). In light of this authority,

Plaintiff has not demonstrated that EDUStaff's provision of substitute teachers to Stockbridge is a service within the "exclusive province" of the state. EDUStaff is not a state actor under the public function test.

Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Lansing*, 202 F.3d at 830 (citation omitted). Plaintiff argues that a close nexus exists between EDUStaff and Stockbridge because they are contracting parties, Stockbridge requires applicants to go through EDUStaff, and applicants are subject to Stockbridge's approval. This type of contractual or cooperative relationship is insufficient to demonstrate that EDUStaff is a state actor. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992) ("Acts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts."). Rather, Plaintiff "must show that the state 'played a role in the decision' made by the private actor that led to the deprivation of Plaintiffs' rights, either by showing, for example, that the contract necessitated the private actor's decision or that state actors were involved in the decision." *M.S. by Covington v. Hamilton Cty. Dep't of Educ.*, 756 Fed. Appx. 510, 514 (6th

Cir. 2018) (citing *Wolotsky*, 960 F.2d at 1336).

Plaintiff does not allege that Stockbridge played a role in EDUStaff's alleged failure to train or supervise Moran. *See id.* "The nexus test asks not whether the state actor . . . was entwined generally with the private entity" but whether Stockbridge was entwined with EDUStaff's decision regarding Moran specifically. *Id.* at 515. Plaintiff has not demonstrated that EDUStaff was a state actor under the nexus test.

Moreover, even if EDUStaff were held to the constitutional standards imposed on state actors, Plaintiff has not demonstrated that EDUStaff acted with deliberate indifference or that the alleged lack of training or supervision caused his injury. *See* Section II.C., *supra.* EDUStaff was not aware of Moran's behavior and had no occasion to discipline her. Although Plaintiff argues that if EDUStaff supervised Moran "it would have been able to observe and stop the misconduct," this is mere speculation, particularly in light of the fact that the abuse and inappropriate communication between Plaintiff and Moran largely took place in private by design. The court will grant summary judgment in favor of EDUStaff on Plaintiff's § 1983 claim.

III. <u>State Claims</u>

All of Plaintiff's federal claims are subject to dismissal. Plaintiff's remaining claims arise under state law: assault and battery, intentional

infliction of emotional distress, and gross negligence against Moran;

intentional infliction of emotional distress against Stockbridge, Cook, and

EDUStaff; and gross negligence against Cook and EDUStaff.[1] In addition,

Stockbridge has asserted a cross-claim against EDUStaff for indemnity and

breach of contract. The court has supplemental jurisdiction over these

claims pursuant to 28 U.S.C. § 1367.[2] However, "a federal court that has

dismissed a plaintiff's federal-law claims should not ordinarily reach the

plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719,

728 (6th Cir. 2006) (finding district court abused its discretion in ruling on

intentional infliction of distress claim after dismissing federal claim). *See*

*also* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89

F.3d 1244,1254-55 (6th Cir. 1996). The court should continue to exercise

jurisdiction over supplemental state claims "only in cases where the

'interests of judicial economy and the avoidance of multiplicity of litigation'

outweigh our concern over 'needlessly deciding state law issues.'" *Moon*,

465 F.3d at 728. "This rule accords with principles of federalism: 'Needless

decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties, by procuring for them a surer-footed

---

[1] Stockbridge, Cook, and EDUStaff have not addressed Plaintiff's intentional infliction of emotional distress claim, perhaps inadvertently. *See* ECF No. 1 at PageID 18.
[2] Diversity jurisdiction is not alleged.

reading of applicable law.'" *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

The court does not discern special circumstances that would weigh in favor of exercising supplemental jurisdiction over the state claims now that all federal claims will be dismissed.[3] Accordingly, the court will decline to exercise supplemental jurisdiction over Plaintiff and Stockbridge's state claims, which may be pursued in state court.

## ORDER

IT IS HEREBY ORDERED that Defendants' motions for summary judgment (ECF Nos. 27, 31, 32) are GRANTED with respect to Plaintiff's § 1983 claims (Counts I and II) and DENIED WITHOUT PREJUDICE with respect to Plaintiff's state tort claims.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (ECF No. 34) is DENIED as to Plaintiff's § 1983 claim against Moran and DENIED WITHOUT PREJUDICE as to Plaintiff's state tort claims.

IT IS FURTHER ORDERED that Stockbridge and EDUStaff's motions

---

[3] Contrary to Plaintiff's suggestion, he will not be prejudiced by refiling claims in state court; the statute of limitations is tolled during the pendency of this action. 28 U.S.C. § 1367(d); *Artis v. D.C.*, 138 S. Ct. 594, 599 (2018).

regarding Stockbridge's cross claim (ECF Nos. 28, 33) are DENIED

WITHOUT PREJUDICE.

The court declines to exercise supplemental jurisdiction over the

parties' state law claims.

Dated:  February 3, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 3, 2021, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk